IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| AUSTIN BRUCE,<br>Individually and on behalf<br>of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>AMERICAN INCOME LIFE INSURANCE<br>COMPANY and STEPHEN JUBREY<br><br>*Defendants.* | Civil Action No. _____<br><br>JURY TRIAL DEMANDED<br><br>COLLECTIVE ACTION<br>PURSUANT TO 29 U.S.C. § 216(b) |

## ORIGINAL COLLECTIVE ACTION COMPLAINT

Austin Bruce brings this action individually and on behalf of all others similarly situated (hereinafter "Plaintiff and the Putative Class Members") who worked for American Income Life Insurance Company and Stephen Jubrey (collectively "Defendants" or "American Life") and were not paid for all hours worked at any time from three years preceding the filing of the Original Complaint through the final disposition of this matter, seeking all available relief, including compensation, liquidated damages, attorneys' fees, and costs, pursuant the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*

**I.
OVERVIEW**

1. This lawsuit includes a collective action pursuant to the FLSA, 29 U.S.C. §§ 201 *et. seq.*, to recover unpaid wages, overtime wages, and other applicable penalties.

2. Plaintiff and the Putative Class Members are those persons who are current and former non-exempt[1] insurance agents who worked for Defendants at any time since January 31, 2015 through the final disposition of this matter, and were not paid minimum wage and/or were not paid overtime for all hours worked over forty (40) in each workweek.

3. Plaintiff and the Putative Class Members routinely work (and worked) in excess of forty (40) hours per workweek.

4. Defendants violated (and continue to violate) the FLSA by not paying Plaintiff and Putative Class Members the federally mandated minimum wage of $7.25 per hour and for failing to pay overtime for all hours worked in excess of forty (40) hours per workweek.

5. Defendants knowingly and deliberately failed to compensate Plaintiff and the Putative Class Members at the applicable minimum wage rate and failed to pay Plaintiff and the Putative Class Members overtime of at least one and one-half their regular rates for all hours worked in excess of forty (40) hours per workweek.

6. The decision by Defendants not to pay the applicable minimum wage or overtime to Plaintiff and the Putative Class Members was neither reasonable nor in good faith.

7. Plaintiff and the Putative Class Members therefore seek to recover all unpaid wages, liquidated damages, and other damages owed under the FLSA as a collective action pursuant to 29 U.S.C. § 216(b).

8. Plaintiff also prays that all similarly situated workers (Putative Class Members) be notified of the pendency of this action to apprise them of their rights and provide them an opportunity to opt-in to this lawsuit.

---

[1] All exemptions are to be narrowly construed and the burden of proof to establish them lies with the employer. *Vela v. City of Houston*, 276 F.3d 659, 666 (5th Cir. 2001).

# II.
# THE PARTIES

9. Plaintiff Austin Bruce ("Bruce") worked for Defendants within the meaning of the FLSA and within the relevant three-year period. Plaintiff Bruce did not receive minimum wage or overtime compensation for all hours worked in excess of forty (40) hours per workweek.[2]

10. The Putative Class Members include those current and former employees who worked for Defendants since January 31, 2015 and have been subjected to the same illegal pay system under which Plaintiff Bruce worked and was paid.

11. American Income Life Insurance Company is a foreign for-profit corporation doing business in the State of Texas and may be served through its registered agent for service: **Joel Scarborough, 1200 Wooded Acres Drive, Waco, TX, 76797-0001**.

12. Stephen Jubrey is an employer as defined by 29 U.S.C. § 203(d). Along with Defendant American Income Life Insurance Company, Stephen Jubrey employed or jointly employed Plaintiff and the Putative Class Members. Stephen Jubrey may be served with process at: **13140 Coit Rd, Suite 334, Dallas, TX, 75240, or wherever he may be found**.

13. Defendants are joint employers pursuant to 29 C.F.R. § 791.2. They have common ownership, oversight and control over Plaintiff and the Putative Class Members. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

---

[2] The written consent of Austin Bruce is attached hereto as Exhibit "A."

# III.
# JURISDICTION & VENUE

14. This Court has subject matter jurisdiction over the FLSA claim pursuant to 28 U.S.C. § 1331 as this is an action arising under 29 U.S.C. §§ 201 *et. seq.*

15. This Court has personal jurisdiction over Defendants because the cause of action arose within this District as a result of Defendants' conduct within this District.

16. Venue is proper in the Northern District of Texas because this is a judicial district where a substantial part of the events or omissions giving rise to the claim occurred.

17. Specifically, Defendants have maintained a working presence throughout North Texas and Plaintiff Bruce trained and worked for Defendants in Dallas, Texas, all of which is located in this District and Division.

18. Venue is therefore proper in this District pursuant to 28 U.S.C. § 1391.

# IV.
# ADDITIONAL FACTS

19. Defendant American Income Life Insurance is an international company that sells life, health, and accident insurance throughout the United States, New Zealand, and Canada.[3]

20. Defendant Stephen Jubrey works for American Income Life Insurance as an Insurance Agent, owning and operating the Dallas division for Defendant American Income Life Insurance.

21. Plaintiff Bruce worked for Defendants as an Insurance Agent from June 2017 until August 2017.

22. Defendants promised Plaintiff and the Putative Class Members that they would be paid six hundred dollars ($600.00) for two weeks of training and then Plaintiff and the Putative Class Members would be paid commission on all of their sales once training was completed.

---

[3] https://www.ailife.com/About.

23. Although Plaintiff and the Putative Class Members completed their training, they were never paid the promised six hundred dollars ($600.00).

24. Plaintiff and the Putative Class Members regularly spent thirteen (13) to fourteen (14) hours per day, in and out of Stephen Jubrey's office, training for their licensing exams for approximately two weeks. Plaintiff and the Putative Class Members were not paid for this time.

25. At the end of the initial two weeks, Plaintiff and the Putative Class Members paid for their own licensing exams. Plaintiff and Putative Class Members were not compensated for these costs.

26. After passing their exams, Plaintiff and Putative Class Members regularly worked in excess of seventy (70) hours per week, training under Defendants.

27. Specifically, Plaintiff Bruce spent one month in Stephen Jubrey's office performing script training, wherein he would memorize a sales script and practice salesmanship. Plaintiff Bruce was not paid for any of this time.

28. After finishing the script training, Plaintiff and the Putative Class Members then spent three (3) more weeks in training both in Stephen Jubrey's office and out in the field. Plaintiff and the Putative Class Members were not paid for this time.

29. Nor were Plaintiff and the Putative Class Members paid a commission for their sales.

30. Specifically, Plaintiff Bruce completed four (4) sales and was not paid a commission on any of those sales.

31. Plaintiff Bruce ended his employment in August of 2017 after spending two months in training without pay and without being paid commission for his completed sales.

32. Upon ending his employment, Plaintiff Bruce was given six hundred and forty dollars ($640.00) as a gift because Stephen Jubrey and his associates "liked him."

33. Defendants are joint employers pursuant to 29 C.F.R. § 791.2.

34. Defendants directly or indirectly hired Plaintiff and the Putative Class Members, controlled their work schedules and conditions of employment, and determined the rate and method of the payment of wages and commissions.

35. Defendants maintained control, oversight, and direction over Plaintiff and the Putative Class Members, including the promulgation and enforcement of policies affecting the payment of wages for overtime compensation.

36. Defendants mutually benefitted from the work performed by Plaintiff and the Putative Class Members.

37. Defendants did not act entirely independently of each other and have not been completely disassociated with respect to the work of Plaintiff and the Putative Class Members.

38. Defendants shared the services of Plaintiff and Putative Class Members.

39. Defendants acted directly or indirectly in the interest of each other in relation to Plaintiff and the Putative Class Members.

40. Specifically, Defendants dictated the routine and goals that needed to be done in order to meet the goals of the respective Defendants or their residents.

41. Moreover, all Defendants had the power to hire and fire Plaintiff and the Putative Class Members; supervised and controlled Plaintiff and the Putative Class Members' work schedules and conditions of their employment; determined their rates and methods of payment; and, maintained their employment records.

42. As a result, all Defendants are responsible, both individually and jointly, for compliance with all of the applicable provisions of the FLSA, including the overtime provisions, with respect to the entire employment for the workweeks at issue in this case.

43. To provide their services, Defendants employed numerous workers—including Plaintiff and the individuals that make up the putative or potential class. While exact job titles may

differ, these employees were subjected to the same or similar illegal pay practices for similar work in the field of maintenance services.

44. Plaintiff and the Putative Class Members' primary job duties included (1) training to sell insurance and (2) selling insurance on behalf of the Defendants.

45. Virtually every job function was (and continues to be) pre-determined by Defendants and/or its clients, including the clothes they must wear, the schedule of work, and other related work duties. Plaintiff and the Putative Class Members were (and continue to be) prohibited from varying their job duties outside of the predetermined parameters.

46. Defendants set Plaintiff and the Putative Class Members' pay and controlled the number of hours they worked.

47. Defendants set all employment-related policies applicable to Plaintiff and the Putative Class Members.

48. Defendants maintained control over pricing and marketing. Defendants also chose equipment and product suppliers.

49. Defendants owned or controlled the equipment and supplies that Plaintiff and the Putative Class Members used to perform their work.

50. Defendants had the power to hire and fire Plaintiff and the Putative Class Members.

51. Defendants made all personnel and payroll decisions with respect to Plaintiff and the Putative Class Members, including but not limited to, the decision to not pay Plaintiff and the Putative Class Members.

52. Defendants bought or provided equipment that Plaintiff and the Putative Class Members used on a daily basis.

53. Plaintiff and the Putative Class Members did not employ their own workers.

54. Plaintiff and the Putative Class Members worked continuously for Defendants on a permanent full-time basis.

55. Defendants, instead of Plaintiff and the Putative Class Members, made the large capital investments in vehicles, buildings, equipment and supplies. Moreover, Defendants paid operating expenses like rent, payroll, marketing, insurance, and bills.

56. Plaintiff and the Putative Class Members relied on Defendants for their work. Plaintiff and the Putative Class Members did not market any business or services of their own. Instead, Plaintiff and the Putative Class Members worked the hours assigned by Defendants, performed duties assigned by Defendants, worked on projects assigned by Defendants, and worked for the benefit of Defendants and its customers.

57. Defendants paid Plaintiff and the Putative Class Members on a weekly basis. Plaintiff and the Putative Class Members did not earn a profit based on any business investment of their own.

58. Defendants improperly classified Plaintiff and the Putative Class Members as independent contractors. The classification was improper because Plaintiff and the Putative Class Members were not in business for themselves. Instead, they were economically dependent upon Defendants for their work.

59. The FLSA mandates that all non-exempt employees be paid at least the minimum wage and overtime at one and one-half times an employee's regular rate of pay.

60. Defendants did not pay Plaintiff or Putative Class Members the federally mandated minimum wage nor did they pay them overtime for all hours worked over forty each week. Specifically, Plaintiff and the Putative Class Members were not paid at all for any hours worked.

61. Defendants denied Plaintiff and the Putative Class Members minimum wage and overtime pay as a result of a widely applicable, illegal pay practice. Plaintiff and the Putative Class

Members regularly worked in excess of forty (40) hours per week but never received minimum wage or overtime compensation.

62. Accordingly, Defendants' pay policies and practices blatantly violated (and continue to violate) the FLSA.

# V.
# CAUSES OF ACTION

**A.  FLSA COVERAGE**

63. All previous paragraphs are incorporated as though fully set forth herein.

64. The FLSA Collective is defined as:

**ALL INSURANCE AGENTS WHO WORKED FOR AMERICAN INCOME LIFE INSURANCE COMPANY, AND STEPHEN JUBREY, AT ANY TIME FROM JANUARY 31, 2015 THROUGH THE FINAL DISPOSITION OF THIS MATTER, AND DID NOT RECEIVE THE MINIMUM WAGE AND/OR DID NOT RECEIVE OVERTIME FOR HOURS WORKED OVER FORTY IN ANY WORKWEEK ("FLSA Collective" or "FLSA Collective Members").**

65. At all times hereinafter mentioned, Defendants have been joint employers within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

66. At all times hereinafter mentioned, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

67. At all times hereinafter mentioned, Defendants have been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise have had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person, or in any closely related process or occupation directly essential to the production thereof, and in that those enterprises have had, and have, an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

68. During the respective periods of Plaintiff and the FLSA Collective Members' employment by Defendants, these individuals provided general maintenance and grounds upkeep services for Defendants that involved interstate commerce for purposes of the FLSA.

69. In performing the operations hereinabove described, Plaintiff and the FLSA Collective Members were engaged in commerce or in the production of goods for commerce within the meaning of §§ 203(b), 203(i), 203(j), 206(a), and 207(a) of the FLSA. 29 U.S.C. §§ 203(b), 203(i), 203(j), 206(a), 207(a).

70. Specifically, Plaintiff and the FLSA Collective Members are (or were) **_non-exempt_** employees who worked for Defendants and were engaged in training and sales. 29 U.S.C. § 203(j).

71. At all times hereinafter mentioned, Plaintiff and the FLSA Collective Members are (or were) individual employees who were engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

72. In violating the FLSA, Defendants acted willfully, without a good faith basis and with reckless disregard of applicable federal law.

73. The proposed collective of similarly situated employees, i.e. putative collective members sought to be certified pursuant to 29 U.S.C. § 216(b), is defined in Paragraph 64.

74. The precise size and identity of the proposed class should be ascertainable from the business records, tax records, and/or employee or personnel records of Defendants.

**B.     FAILURE TO PAY WAGES IN ACCORDANCE WITH THE FLSA**

75. All previous paragraphs are incorporated as though fully set forth herein.

76. Defendants violated provisions of Sections 6, 7, and 15 of the FLSA, 29 U.S.C. §§ 206, 207, and 215(a)(2) by employing individuals in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA and (a) failing to pay the federally mandated

minimum wage, and (b) failing to compensate such employees for hours worked in excess of forty (40) hours per week at rates of at least one and hone-half times their regular rate.

77. Plaintiff and the FLSA Collective Members have suffered damages and continue to suffer damages as a result of Defendants' acts or omissions as described herein; though Defendants are in possession and control of necessary documents and information from which Plaintiff would be able to precisely calculate damages.

78. Moreover, Defendants knowingly, willfully, and in reckless disregard of the law carried out its illegal pattern of failing to pay Plaintiff and other similarly situated employees' minimum wages and overtime compensation. 29 U.S.C. § 255(a).

79. Defendants knew or should have known its pay practices were in violation of the FLSA.

80. Defendants are sophisticated parties and employers, and therefore knew (or should have known) its policies were in violation of the FLSA.

81. Plaintiff and the FLSA Collective Members, on the other hand, are (and were) unsophisticated laborers who trusted Defendants to pay overtime in accordance with the law.

82. The decisions and practices by Defendants to pay neither minimum wage or overtime compensation were neither reasonable nor in good faith

83. Accordingly, Plaintiff and the FLSA Collective Members are entitled to their unpaid minimum wages and overtime wages for all hours worked in excess of forty (40) in a workweek pursuant to the FLSA in an amount equal to one-and-a-half times their regular rate of pay, plus liquidated damages, attorneys' fees and costs.

### C. FLSA COLLECTIVE ACTION ALLEGATIONS

84. All previous paragraphs are incorporated as though fully set forth herein.

85. Pursuant to 29 U.S.C. § 216(b), this collective claim is made on behalf of all those who are (or were) similarly situated to Plaintiff.

86. Other similarly situated employees have been victimized by Defendants' patterns, practices, and policies, which are in willful violation of the FLSA.

87. The FLSA Collective Members are defined in Paragraph 64.

88. Defendants' failure to pay the minimum wage or overtime compensation results from generally applicable policies and practices, and does not depend on the personal circumstances of the individual FLSA Collective Members.

89. Thus, Plaintiff's experiences are typical of the experiences of the FLSA Collective Members.

90. The specific job titles or precise job requirements of the various FLSA Collective Members does not prevent collective treatment.

91. All of the FLSA Collective Members—regardless of their specific job titles, precise job requirements, rates of pay, or job locations—are entitled to be properly compensated at the minimum wage and for all hours worked in excess of forty (40) hours per workweek.

92. Although the issues of damages may be individual in character, there is no detraction from the common nucleus of liability facts. Indeed, the FLSA Collective Members are non-exempt employees entitled to overtime after forty (40) hours in a week.

93. Defendants employed a substantial number of similarly situated Insurance Agents since January 31, 2015. Upon information and belief, these workers are geographically dispersed, residing and working in locations across the United States. Because these workers do not have fixed work locations, they may work in different states across the country in the course of a given year.

94. Absent a collective action, many members of the proposed FLSA collective likely will not obtain redress of their injuries and Defendants will retain the proceeds of its rampant violations.

95. Moreover, individual litigation would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the individual members of the classes and provide for judicial consistency.

96. Accordingly, the FLSA collective of similarly situated plaintiffs should be certified as defined as in Paragraph 64 and notice should be promptly sent.

# VI.
# RELIEF SOUGHT

Plaintiff respectfully prays for judgment against Defendants as follows:

a. For an Order recognizing this proceeding as a collective action pursuant to Section 216(b) of the FLSA, certifying the FLSA Collective as defined in Paragraph 64 and requiring Defendants to provide the names, addresses, e-mail addresses, telephone numbers, and social security numbers of all potential collective action members;

b. For an Order approving the form and content of a notice to be sent to all potential FLSA Collective Members advising them of the pendency of this litigation and of their rights with respect thereto;

c. For an Order awarding Plaintiff (and those FLSA Collective Members who have joined in the suit) back wages that have been improperly withheld;

d. For an Order pursuant to Section 16(b) of the FLSA finding Defendants liable for unpaid back wages due to Plaintiff (and those FLSA Collective Members who have joined in the suit), for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those FLSA Collective Members who have joined in the suit);

e. For an Order awarding the costs and expenses of this action;

f. For an Order awarding attorneys' fees;

g. For an Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law;

h. For an Order awarding Plaintiff a service award as permitted by law;

i. For an Order compelling the accounting of the books and records of Defendants, at Defendants' own expense;

j. For an Order providing for injunctive relief prohibiting Defendants from engaging in future violations of the FLSA, and requiring Defendants to comply with such laws going forward; and

k. For an Order granting such other and further relief as may be necessary and appropriate.

Date: January 31, 2018

Respectfully submitted,

**ANDERSON2X, PLLC**

By: /s/ *Clif Alexander*
**Clif Alexander**
Federal I.D. No. 1138436
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Federal I.D. No. 777114
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Federal I.D. No. 1122168
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Federal I.D. No. 19259
Texas Bar No. 00793838
cgordon@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**Attorneys in Charge for Plaintiff and the Putative Class Members**